Our final case this morning is United States v. Romero, No. 17-2172. Council? Good morning. May it please the Court. My name is Todd Hotchkiss. I represent Appellant Kimberly Romero, whose supervised release was revoked by the District Court. Insufficient evidence was presented from which the District Court could find by a preponderance of the evidence that Ms. Romero committed the crime of child abuse under New Mexico State law by being criminally negligent in permitting Mr. Suarez to commit child abuse on her three-year-old son. The District Court abused its discretion specifically because it acted without factual support when it relied on a theory of Ms. Romero being criminally negligent because of three previous Children, Youth, and Family Department investigations of her son and allegations that Mr. Suarez had previously committed child abuse on her son. And Ms. Romero was aware of it. However, to make the necessary inferences, the District Court erroneously relied on allegations which CYFD itself found were unsubstantiated. Council, I take it that we're reviewing this under clearly erroneous standards? The factual findings are reviewed under clearly erroneous standards. All right. And that would include the inference that she was on notice of his potential to abuse the child?  All right. Correct. Why weren't the child statements alone, wholly apart from the state agency, that Mr. Suarez hurt him, why aren't those enough? I'm not saying that he actually did, but the statements that he did, enough to put the mother on notice. And you're talking about, Your Honor, just for clarification, the statements in the prior three allegations? Yes. Okay. Well, first of all, CYFD found those allegations unsubstantiated. Well, my question, though, goes to, you've got a child who says that the boyfriend had hurt him on three occasions. And I understand the agency concludes unsubstantiated. But the child said that three times, even if the agency hadn't investigated them. The child states those three times, but maybe they haven't been confirmed. Isn't that enough to say, to put the mother on notice, I better watch things closely in terms of putting my child with this Mr. Suarez? And, Your Honor, and you're speaking specifically of notice for purposes of criminally negligent under the child abuse statute. Yes. Well, because the New Mexico Supreme Court in Stay vs. Chavez stated, without a record of further intervention by CYFD, it is difficult for this court to envision how conditions that did not merit further civil action could put defendant on notice. Of the potential for criminal prosecution. Also, factually, Your Honor, part of the problem is we had no witness from those investigations who testified. We had one witness from CYFD, Ms. Pierce, who testified she had, quote, no idea of what happened. And she said it cannot be proven. So I would submit to you that because of the law from the New Mexico Supreme Court and the facts in this case, that it's not sufficient under the criminal statute for notice. Let me ask you about Chavez. That case is a little different, isn't it? The reports were on filthy living conditions, right? Yes. And so the question was whether that should have put him on notice of seriously threatening or harmful risk to the children, which is really a different connection between just a filthy home versus are your children at risk. Here, the specific allegation from the child is that on three occasions, the live-in boyfriend bit him, hurt his fingers, and I think scratched his face. So what the child is saying is directly related to the specific risk here is that that specific adult might harm the child. Isn't that enough? No. First of all, it's double hearsay at best. And this court in Cortez v. McCauley said that unsubstantiated double hearsay by a two-year-old alone is not probable cause. It is not enough. There were no the United States presented no. Why is it double hearsay? The child did not testify at the proceeding. The child is just putting the mother on notice. It's not offered for the truth. She's putting the mother on notice that he got hit. She hears that the child say that the boyfriend hit him. Why isn't that enough for the mother to say, I better not put my kid with the boyfriend? Well, because, first of all, again, we don't know because no evidence was presented by the government about specifically why each of these allegations were found to be unsubstantiated. No witness testified who could provide any insight into that. And that's why it is speculation to believe the veracity of those statements because we don't know why. And similarly, to the extent it implicates the credibility of Ms. Romero, it's without any evidence to believe that she was not telling the truth in those is unfair to her because there was no witness to be able to testify. And that's why it's speculation. And that's why it's without factual support in the record. We believe that any inference from that is unreasonable. The court ruled on two aspects, it seemed to me. One was that she shouldn't have let that discipline happen in the first place. And the second was that when she was sitting downstairs and she heard the belt come out of the pants in the first place, the first hit, that she should have intervened and stopped it. Will you respond to the second because I don't think that has quite the same notice. No, I very much agree, Your Honor. And that brings up some of the oddity of this case because despite that testimony, then Chief Judge Armijo initially on August 10th found there was insufficient evidence and specifically said that interpreting those same circumstances that my client in fact acted to stop it. Then on August 25th, then Chief Judge Armijo reversed herself 180 degrees. And again, for different reasons, we believe that there was no factual support for her findings in that respect. For these reasons. And I believe I pointed these out in my brief and the transcript shows this, that when asked specifically, Ms. Pierce and Deputy Sanchez did not establish the factual circumstances from which that inference could be made. For instance, they admitted that there were no time frame established. We don't know how long it was she was upstairs observing. We don't know, her statement was, her being Ms. Romero, that when she got up there, she saw two more spanks and that she was in shock at what was happening. She then intervened and an argument occurred between her and Mr. Suarez and she takes the child away. We don't know because the Deputy Sanchez and Ms. Pierce from CYFD, who both interviewed Ms. Romero, did not ask her questions about how long she was upstairs, establishing the sequence of events. And as a matter of fact, Ms. Pierce testified herself that it's possible that when Ms. Romero got upstairs, that she acted as quickly as she could and got her son out of there. So we do not believe that there is any factual support for an inference on this second aspect of Judge Armijo's finding, that that rises to the level of being criminally negligent. Would being shocked or surprised that the boyfriend's beating her son excuse a failure to intervene? Yes. I mean, it suggests, as Ms. Romero stated in her statements, that she had asked him to help her discipline the boy. That she said she did not at all want this to happen. Ms. Pierce repeated that testimony and believed that that was the case. And in New Mexico, under New Mexico state law, spanking is permissible. So when she gets upstairs and sees what she saw, being shocked under those circumstances is entirely reasonable. Well, spanking's permissible if it doesn't leave a mark. Correct. And she walks in and he's beating the child with a belt. Which is the nature of the shocked response by Ms. Romero. It has nothing to do with that spanking's legal, because that's not a legal spanking, is it, in any state? Well, but she wasn't, again, this isn't in the record, but it appears to me that that statement of being shocked is consistent with the fact that she saw something she didn't anticipate, Your Honor. I'd like to reserve the balance of my time. Thank you. May it please the court. Counsel, my name is Marissa Ong, and I'm an assistant United States attorney in Las Cruces, New Mexico. In March 2017, Kimberly Romero asked her boyfriend, Cain Suarez, to discipline her barely three-year-old child, knowing that on at least three prior occasions he had been accused of physically abusing the boy. So let's get right to the issue. I think we've got the background facts. How could the district court reasonably infer that Ms. Romero knew Mr. Suarez was potentially abusive when those three previous incidents had been investigated and were deemed to be unsubstantiated? Well, Your Honor, I think you hit on this when my co-counsel was up here, but basically she knows that the child is saying, this is the person who's doing it, and we know that on those three prior occasions there was actual physical markings on the child. I believe that in September of 2016, that's when there was bite marks and bruising on his cheek. In November of 2016, he had scratches on his face. And in January of 2017, that's when he had bruising and infection on his fingers. So it's that knowledge. We also know, based on Ms. Romero's own statements, that her boyfriend had told her that he didn't think that he... He didn't think that... I believe what she stated is that Suarez had told her that she was too easy on the boy, and that she babied him. And so I think that those combinations of circumstances put her on fair notice, that not only... And in this case, not only is she leaving her child with him, but she is actually asking him to discipline the child. There are cases in New Mexico where courts of appeals have affirmed convictions where mothers know that someone has abused their child, and they leave them in their care, and they're not even there. But those are all cases where there was pretty clear evidence the mother knew. She was well aware that the partner was abusive. I mean, here, this record, I can't tell on these three instances. I know what the testimony was at trial about what a different person wrote in a report about these instances, these three instances. But I have no idea what the child told his mother about these individual instances. What evidence was there about that? Well, we know that CYFD was called out. I mean, you do have to make an inference. There is nothing in the record that clearly says, we told Ms. Romero or Ms. Romero was there. However, I believe that it is a reasonable inference that the district court made to assume that in those circumstances Ms. Romero was present. She's the child's mother and the child's caretaker. So to reach the opposite conclusion that she didn't know about any of this just wouldn't make any sense. Was there evidence in the record that when the CYFD interviewed the child that she was present for the interview with the CYFD? No. Is there anything in the record? I think we may have covered this, but I'll say it anyway. Is there anything in the record showing that the child told the mother that the boyfriend had hurt him independent of the CYFD interview? So for at least one of the prior instances there is, and that's the instance that has to do with the bruising on his fingers from January of 2017, and we know that she was aware of it because she actually told the CYFD worker that he had smashed his fingers in the door. Well, she was aware of the smashed fingers, but was she aware that the son had said that it was the boyfriend who had smashed his fingers? There was no testimony by anyone saying specifically that she was told that. However, I think that in these circumstances, CYFD, they're out there, they're responding to the daycare where the child was, and presumably the same thing happened then as happened this time where the mother is there. You can't presume, have inference and presumption on inference in a criminal conviction, can you? We need to have evidence of her knowledge. Well, this is a supervised release violation, so we're not dealing with evidence beyond a reasonable doubt. The standard is preponderance, which is much lower. It's more likely this happened than it didn't happen. And I think that our position is that in this circumstance, evidence was presented that would have put her on notice that there were these three prior allegations. The first two were not investigated. It wasn't until the third that there actually was an investigation, right? That's correct. So at the time, I think it was the smashed fingers that were last. Yes. Okay. At that time, the daycare center says, you know, now that we're looking at these, I remember these two prior incidents. And we have no idea what happened in terms of whether somebody questioned the mother, whether the mother was told what the little boy was saying. And even on the smashed fingers incident, we don't know if they just said what happened to his fingers and the mom said smashed him in the car door, and that's the extent of the interaction, the conversation. Don't you see this as a problem for sufficient evidence? Well, I think that this is an example of circumstantial evidence. So we have two types of evidence that we deal with. There's direct and circumstantial. And because of the evidence that's in the record, I do believe that this is circumstantial evidence of her knowledge. However, that can be equally as powerful as direct evidence. And I don't think that it should be required that the mother actually acknowledges this. If we're going based off of what defendants themselves acknowledge, then we would rarely be able to prove crimes at any level. And so here in the record, what we do have is we have these three prior instances. We know that the mother has dealt with CYFD in the past with regard to the last instance and that this little child has repeatedly said, daddy did it, daddy did it. But we don't know whether the mother knows the child has said repeatedly, daddy did it. Well, we know that the son is living with the mother and her boyfriend at the time that these instances occur. We know that there are physical markings on the child. And we know that the daycare where the child is attending, once it gets to the third instance, notified CYFD of it. So I think to say that we don't know that the mother knew about it is just too far of a stretch. How could she have not known about it? Well, I mean, it could be, in fact, that what the kid was saying about the smashed fingers is true and it was an accident, right? The mother could have been there, daddy could have slammed the door, and the kid could have had his, I mean, these things happen. We have to speculate to say that she knew that Mr. Suarez was abusing her child. And so I think on that it's important to get back to the standard of review. So those facts are reviewed under the clearly erroneous standard because the district court did specifically find that Miss Romero was on notice of these three prior instances. Right. He said we can infer it. Yes, that is our position. And I think that based on this record, those findings are not clearly erroneous. They are supported by evidence that is in the record. You do have to make an inference to get there. However, I think that given the information we have in the record, that is a fair inference to make. That's the inference that the district court made. And given those facts, Miss Romero was on notice that these prior instances had occurred. And in light of that, not only did she leave her child with Mr. Suarez, she actually asked him to help discipline the child. And so I think that under these circumstances, it's clear that her conduct did violate the New Mexico child abuse statute. And there was no error on the district court's part in revoking her supervised release. Can we turn to the failure to intervene in the spanking? Yes, Your Honor. We have no information about whether this was smack, smack, smack, smack, or there were intervals between the spanking. We have no idea how long it took her to get upstairs. I mean, it's very difficult to make inferences about what she should have done without having that kind of information. And, Your Honor, that may be true, but that's what we ask fact finders to do all the time. It's going to be rare, especially in a circumstance like this, where abuse happens in the home, that we are going to know second by second exactly what happens, absent the defendant giving a very detailed confession. Usually the way that these cases are pieced back together is there's a doctor who performs an examination, and then they can testify about what they are able to observe with regard to the injuries. But rarely do we have a timeline that says, okay, the first hit happened at this time, and then it took approximately three seconds later. Well, what makes this issue difficult is that it's based on inaction, right? It's a failure to intervene. But didn't Ms. Romero actually intervene to stop Mr. Suarez once she saw the two belt strikes? According to her statement, she did, but our position is that at that point it's too late. She asks him to discipline the child. According to her statement, he takes the child upstairs. She hears him take off his belt and then hears five whacks before she decides to actually go upstairs. And then while she's standing there, according to her own admission, she sees him hit the child two more times. She sees that the child doesn't have any clothing on. Basically, he's pulled his pants down. And even though Ms. Romero never made any statements about what's going on with the child, I think it's a reasonable inference to assume that while this is happening, the child is screaming. Let me ask you this. Let's suppose that instead of preponderance of the evidence, we're now at a trial where she's been charged with this. Is this enough for a reasonable jury to convict beyond a reasonable doubt that she failed to intervene? Well, Your Honor, that's a different question. Well, I want to pose it so we can do a little comparison. Sure. Right? Isn't there a reasonable doubt about whether she intervened or failed to intervene? If there had been a trial and the standard had been beyond a reasonable doubt and it had been me personally, I would have introduced more evidence. Well, no. We're not dealing with beyond a reasonable doubt. Yes. And it seems to me like you're relying on the fact that we don't have that standard. Instead, we have a preponderance of the evidence. And so I'm trying to understand where you might place this in the spectrum of proof. And how do we get past preponderance? If we don't have the timeline, there's evidence that Ms. Pierce said it's entirely possible that as soon as she got up there and saw the two strikes, she acted to stop it. So maybe she failed to intervene, maybe she didn't fail to intervene, but how is it more likely than not, how is it a preponderance here that she failed to intervene? So it's more likely than not because even though we don't have a specific timeline, we know that there are stairs involved. So we know that, okay, she had to go up the stairs. And even if Ms. Pierce testified it's possible that she could have intervened, she never said she did. And what Ms. Romero said is that she didn't do anything initially because she was in shock. And she shouldn't have been in shock at that point because she's watching her child being beaten by someone. So at a minimum, at a minimum, even taking away the notice, the prior notice, at the point that she hears her boyfriend take off his belt and starts beating her child, it's a reasonable inference that the child was crying while this is happening. I mean, the marks on his body are pretty significant. She gets up there and instead of doing anything in that moment to stop it, she stands there and watches him hit her son two more times. And our position is that that action in and of itself would constitute a violation of the statute. Is it relevant to our assessment of the record that the district judge, at least at one point, was prepared to deny the revocation? Your Honor, I see I'm out of time. May I answer your question? Please do. I don't think that has any bearing on... Doesn't it show that at least in that judge's mind things were pretty close? It's a difficult case, Your Honor, and I think the district judge understood that. However, our position is that she got it right and we would ask that you affirm.  Thank you. Mr. Hodgkiss. It is a difficult case, and it's a difficult case in a number of ways when you look at it. I mean, each of the government witnesses each had a different reason why they believed that Ms. Romero violated the statute, and each of them turned out to be wrong. Whether it was failure to take for medical evaluation or the probation officer thought she hadn't reported it to him timely. The deputy didn't arrest her that night, only issued a criminal complaint with the erroneous allegation of the fractured arm, and he was wrong. So it's complicated by that. It's complicated by the paucity of evidence, and I think that really lays squarely with the investigating people. Ms. Romero talked to each of them. She did not invoke a right to counsel. She did not refuse to answer questions. Ms. Pierce interviewed her. Deputy Sanchez interviewed her. You know, they had opportunities to get the facts that are missing that if they were established, could have made inferences reasonable and not speculative, because we have a paucity of the record. These inferences are inherently speculative, and for that reason, we would request that you reverse the judgment of the district court and remand for further proceedings. Thank you, counsel. Thank you. Thank you both for your arguments this morning. The case will be submitted, and counsel are excused. This court will stand in recess.